IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KATHY J. BROWN,

                                                        OPINION AND ORDER

                Plaintiff,

                                                        13-cv-370-bbc

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Kathy J. Brown is seeking judicial review of a decision denying her application for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). Plaintiff contends that the administrative law judge erred by (1) failing to fully account for plaintiff's psychological limitations in his residual functional capacity assessment; (2) failing to give proper weight to two medical opinions; and (3) failing to give proper credit to plaintiff's statements about the intensity and persistence of her impairments. I find that the administrative law judge did not commit a reversible error on any of these issues. Accordingly, I am affirming the administrative law judge's decision.

BACKGROUND

      The administrative law judge found that plaintiff has not engaged in substantial

gainful activity since September 15, 2010, and that she suffers from fibromyalgia, major depression, substance abuse disorders and anxiety with features of post traumatic stress disorder and social avoidance. AR 30. Plaintiff has received "intermittent" treatment for fibromyalgia since 2010, AR 30, and began receiving treatment for psychological problems in 2004, with more regular psychological care starting in 2009. AR 31. The administrative law judge concluded that plaintiff's impairments are not severe: plaintiff has a mild restriction in daily living; mild difficulties in social functioning; and moderate difficulties in concentration, persistence and pace. AR 32-33. He also determined that plaintiff experienced "no episodes of decompensation, which have been of extended duration." AR 32.

In his residual functional capacity assessment, the administrative law judge stated that plaintiff would be off task for ten percent of the work day to accommodate her need to sit or stand. In addition, he limited plaintiff to work that is low stress, simple, routine and repetitive and work that does not require a fast pace, many workplace changes or more than occasional interaction with the public and coworkers. AR 33-34. Relying on this assessment and the testimony of a vocational expert, the administrative law judge concluded that plaintiff was unable to perform any of her past relevant work but that she could work as an assembler (4,000 jobs in Wisconsin), industrial inspector (1,800 jobs in Wisconsin), hand packager (2,200 jobs in Wisconsin) or office helper (6,100 jobs in Wisconsin). AR 37-38.

OPINION

A. Residual Functional Capacity Assessment

1. Interaction with supervisors

In his residual functional capacity assessment, the administrative law judge determined that plaintiff should be limited in her interaction with the public and coworkers. Plaintiff takes issue with this determination because plaintiff's examining psychologist, Dr. Douglas Soat, concluded that plaintiff "may have problems responding appropriately to supervisors and coworkers because of difficulties controlling her anger." AR 294. Plaintiff cites Young v. Barnhart, 362 F.3d 995, 1002 (7th Cir. 2004) in support of the contention that the distinction between interactions with "public and coworkers" and interactions with supervisors is critical. However, one of the issues in Young was the plaintiff's ability to take orders, which is an issue specific to interacting with supervisors. In this case, plaintiff's limitations pertain to her ability to interact socially and control her anger, so the distinction between supervisors and the public and coworkers is minor. Moreover, plaintiff does not explain how this change in the administrative law judge's residual functional capacity assessment would have altered the disposition of her claim. Because the limitation is ultimately the same whether or not the administrative law judge used the term "supervisor," his assessment was not in error.

2. Off-task time

Plaintiff says that the administrative law judge did not provide sufficient explanation

3

for his determination that she could work jobs that required her to be on task for 90 percent of the work day. Plaintiff says that in light of the combination of her fibromyalgia and her mental impairments, which include limitations in concentration and pace, he should have found that she needed to be off task for more than 10 percent of the work day. However, the administrative law judge's findings already took into account both her physical and mental limitations. He found that plaintiff should be allowed to be off task for 10 percent of the work day to accommodate her sitting and standing requirements related to her fibromyalgia, and, citing plaintiff's history of mental impairments, he found that plaintiff would be "limited to simple, routine, and repetitive tasks" in a "work environment free of fast-paced production standards." AR 33-34. Plaintiff does not explain why her mental limitations would not be accommodated by the 10 percent off-task time. Because the administrative law judge's assessment accounts for plaintiff's physical and mental limitations, I am not persuaded that the administrative law judge erred in assessing plaintiff's need for off-task time.

3. Global assessment score

Several of plaintiff's medical reports and assessments include her global assessment of functioning score, which "represent[s] the clinician's judgment of the individual's overall level of 'functioning on a hypothetical continuum of mental health-illness.'" American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders V 16 (2013). Plaintiff's scores were generally between 50 and 53, AR 357, 441, 499, which may indicate

"[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Text Revision IV 34 (2000). Plaintiff did receive one score of 30, AR 495, which may indicate "serious impairment in communication or judgment" or "inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." Id,

Plaintiff says that the administrative law judge failed to discuss her global assessment of functioning scores before determining her residual functional capacity and that this failure is reversible error. However, plaintiff's scores are merely a summary of her symptoms and functioning, such as her ability to concentrate in order to complete a task or her awareness of reality. Id. (scores are based on "**either** the symptom severity **or** the level of functioning") (emphasis in original). The administrative law judge discussed and considered such matters in his opinion. For example, he analyzed plaintiff's struggles with concentration and attention and he discussed plaintiff's alertness and orientation to place, time and person. AR 33, 36. The administrative law judge fulfilled his obligation to consider plaintiff's symptoms and functioning and was not required to consider or discuss plaintiff's global assessment of functioning scores independently. Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010) ("'nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score'") (quoting Wilkins v. Barnhart, 69 Fed. Appx. 775, 780 (7th Cir. 2003)).

B. <u>Medical Source Opinions</u>

1. <u>Dr. Soat</u>

Dr. Douglas Soat examined plaintiff and completed a disability report on plaintiff's impairments. AR 289. Plaintiff says that the administrative law judge failed to consider part of Dr. Soat's opinion in which he stated that "because of the claimant's significant problems, her vocational prognosis does not appear to be very good." AR 294. In fact, the administrative law judge accorded Dr. Soat's opinion "great weight," and noted that Dr. Soat reported that plaintiff had anger issues, slow work pace, problems with her attention and concentration and trouble adapting to work changes, but he did not discuss the quoted passage. AR 37.

As an initial point, Dr. Soat's statement on plaintiff's "vocational prognosis" is vague and conclusory. Dr. Soat does not say that plaintiff is disabled. For example, he could mean that he found plaintiff able to work but lacking motivation to find work or alternatively, that he believed plaintiff capable of working but unable to find work readily. Neither of these readings of his opinions contradicts the administrative law judge's conclusions.

On the other hand, if Dr. Soat is stating his opinion about plaintiff's disability, his opinion is not based on plaintiff's mental or physical impairments. Rather, it is a conclusory statement about plaintiff's ability to work. It is true that the Court of Appeals for the Seventh Circuit has stated that administrative law judges should not ignore a medical source's opinion on the claimant's ability to work. <u>Roddy v. Astrue</u>, 705 F.3d 631 (7th Cir. 2013) ("Even if Dr. Wright's opinion of Roddy's ability to work is not a 'medical opinion'

6

under the regulatory checklist, that does not mean that the ALJ should have ignored that statement."). This case is distinguishable from Roddy, in which the administrative law judge ignored much of the basis for the treating physician's medical opinion. In this case, the administrative law judge *did* consider Dr. Soat's medical opinion; he referred to Dr. Soat's analysis of plaintiff's problems with anger, concentration and pace. The administrative law judge considered any medical basis Dr. Soat might have had for his conclusion on plaintiff's vocational prognosis, and he did not err by failing to discuss that conclusion separately.

2. Dr. Wakely

Dr. David Wakely is one of plaintiff's treating providers. He began seeing plaintiff biweekly in January 2011; he also evaluated her in 2009. AR 499. He completed an assessment for plaintiff in February 2011 in which he stated that plaintiff suffered from "marked" restrictions in daily living and social functioning and "extreme" deficiencies in concentration, persistence or pace. AR 502-03. The administrative law judge gave "little weight" to this assessment because (1) Dr. Wakely listed plaintiff's impairments of concentration, persistence and pace in a "somewhat off-hand" manner without providing specific work limitations; (2) the progress notes from other physicians did not support Dr. Wakely's assessment; and (3) Dr. Wakely failed to mention plaintiff's history of substance abuse and its effect on her impairments. AR 36.

An administrative law judge must provide an adequate explanation for not according controlling weight to the opinion of a treating physician. Clifford v. Apfel, 227 F.3d 863,

871 (7th Cir. 2000). It is not clear that Dr. Wakely is a treating *physician* because he is a psychologist. Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010) (administrative law judge required to give controlling weight to doctor's statements in part because he was "a psychiatrist, not a psychologist"). However, the commissioner does not raise this issue, so I will proceed as if Dr. Wakely were a treating physician.

Plaintiff argues that the administrative law judge failed to explain his reasons for discounting Dr. Wakely's statements because (1) the administrative law judge did not consider evidence in the progress notes that supported Dr. Wakely's assessment and (2) the administrative law judge did not explain the relevance of Dr. Wakely's failure to discuss plaintiff's substance abuse. As to the latter argument, it appears that the administrative law judge was noting the inconsistency and incompleteness of Dr. Wakely's assessment in which Dr. Wakely failed to mention this important aspect of plaintiff's mental health. Nevertheless, even if it was erroneous for the administrative law judge to rely on Dr. Wakely's failure to discuss plaintiff's substance abuse, his other reasons provide adequate bases for discrediting Dr. Wakely's assessment. The administrative law judge gave little weight to Dr. Wakely's opinions because he made them "off-hand" and without specificity and because some provider notes in the record (exhs. ##8F, 17F and 19F) tended to show that plaintiff was "alert and fully oriented to time, place, and person," AR 36, in contradiction to Dr. Wakely's view that plaintiff had "extreme" problems with concentration and persistence.

Plaintiff says that the administrative law judge should have considered other progress

8

notes at AR 427-32, 437 and 441 because these notes support Dr. Wakely's assessment. As an initial matter, these notes are among those in exhibits 17F identified by the administrative law judge, so it is not clear that he failed to consider them. (Plaintiff also points to documents from exhibit 19F as evidence supporting Dr. Wakely, but she does so only in her reply brief, so these documents have not been considered.) Nonetheless, the notes do not provide the support plaintiff asserts. At AR 427, the provider describes plaintiff as "distracted" without elaboration. Several other notes indicate that plaintiff *described herself* as distracted, AR 428, 430, 437, and the remainder make no helpful reference. These descriptions do not amount to the extreme impairments in attention, motivation and concentration described by Dr. Wakely. This lack of support for the intensity Dr. Wakely described is sufficient reason for the administrative law judge to discredit the assessment.

### C. Assessment of Plaintiff's Testimony

The administrative law judge concluded that plaintiff's statements on the intensity, persistence and limiting effects of her conditions were not credible. Plaintiff argues that the administrative law judge discredited her statements for inappropriate reasons: (1) that plaintiff's daily activities contradicted her claims of disability and (2) that plaintiff made inconsistent statements about her drug use. In addition, plaintiff argues that the administrative law judge's use of boilerplate language makes it impossible to tell whether he conducted a proper inquiry into plaintiff's credibility.

9

1. Plaintiff's daily activities

   In his decision, the administrative law judge recounted plaintiff's testimony about her daily activities, specifically, that she could "do some household chores such as cooking, washing dishes, and washing laundry" and, as a general rule, that she could not leave her home except for some shopping and to drop her children at the mall. AR 34. Plaintiff says that because she merely loaded dishes in the dishwasher (rather than washing them by hand), burned and cut herself when cooking and did only limited shopping, it was error for the administrative law judge to rely on these activities as evidence of her abilities. However, nothing in the opinion shows that the administrative law judge relied on these activities as evidence of plaintiff's ability to work. Rather, it appears he merely listed them as part of what was discussed during the hearing.

   The administrative law judge's residual functional capacity assessment provided limitations as to plaintiff's sitting and standing and as to plaintiff's interaction with others, which is consistent with plaintiff's stated impairments in sustained housework and in leaving her home. Thus, even if the administrative law judge mischaracterized plaintiff's testimony, any error is harmless.

   In addition, plaintiff argues that the administrative law judge should not have relied on plaintiff's behavior during the hearing as evidence of her ability to work, but plaintiff raises this issue only in her reply brief, so I will not consider it. In any case, plaintiff has not shown that the administrative law judge's other reasons for discrediting her were insufficient, so this argument would not have changed the outcome of her appeal.

2. <u>Plaintiff's drug use</u>

The administrative law judge noted that when he questioned plaintiff about her use of "illicit or street drugs," she denied any use but, later in the hearing, admitted to using both marijuana and cocaine (though she said that she was unaware that the marijuana was laced with cocaine on the occasion that she tested positive for the substance). AR 35. The administrative law judge also pointed out that the record is "replete" with references from her medical providers to her persistent marijuana use. AR 35.

Plaintiff relies on <u>McClesky v. Astrue</u>, 606 F.3d 351, 353 (7th Cir. 2010), for the proposition that a claimant's denial of drug use may be understandable because the claimant may fear revealing criminal behavior. However, <u>McClesky</u> does not prohibit administrative law judges from considering either a claimant's denial of drug use or the drug use itself when reaching their decisions on credibility. <u>Id.</u> (lying about drug use may reveal that claimant is willing to lie about other things and drug use may reveal claimant's lack of seriousness about lawful treatment; in any case administrative law judge must discuss issue). Thus, I conclude that the administrative law judge's reliance on plaintiff's drug use and inconsistent statements was not reversible error. In any event, the administrative law judge relied on other reasons to question plaintiff's credibility, such as her inconsistent statements about when her pain from fibromyalgia started, AR 34, and about the effectiveness of her prescription medication, AR 35. Both of these were valid reasons to discredit her.

The commissioner argues that the administrative law judge was entitled to consider plaintiff's conviction and probation violation in determining her credibility. Plaintiff

11

disputes this argument, but it is not clear that the administrative law judge relied on that information. Accordingly, I will not consider it.

3. Boilerplate

Toward the end of his decision, the administrative law judge stated "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 36. This is precisely the language the court of appeals has criticized as "opaque boilerplate . . . . that gets things backwards." Bjornson v. Astrue, 671 F.3d 640, 644-45 (7th Cir. 2012). However, when an administrative law judge used this exact language in Pepper v. Colvin, 712 F.3d 351, 367 (7th Cir. 2013), the court of appeals "acknowledge[d] this is the same language we have repeatedly described as 'meaningless boilerplate'" but added that "the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination."

That is the case here. The administrative law judge pointed to relevant reasons for discrediting plaintiff, as discussed above, and he explained how he weighed the various providers' assessments and other evidence of plaintiff's conditions. Furthermore, he made it clear that he considered plaintiff's credibility before determining her residual functional capacity: he stated that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective

medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record." AR 34.

I conclude that plaintiff has not identified any deficiency in the administrative law judge's opinion that requires reversal or remand.

ORDER

IT IS ORDERED that plaintiff Kathy J. Brown's motion for summary judgment, dkt. #10, is DENIED. The clerk of court is directed to enter judgment for defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, and close this case.

Entered this 16th day of May, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge